**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                :
FRANCISCO MUNOZ-VALDEZ,         :
                                :   Civil Action No.
            Petitioner,         :   12-7745 (RMB)
                                :
        v.                      :
                                :
JORDAN R. HOLLINGSWORTH,        :   **O P I N I O N**
                                :
            Respondent.         :
_____:

**Bumb**, District Judge:

   This matter comes before the Court upon Respondent's answer to the § 2241 application ("Petition") filed by Francisco Munoz-Valdez ("Petitioner").[1]  See Docket Entries Nos. 1 and 8.

___

   [1]  The procedural history of this matter is as follows: Since the Petition arrived unaccompanied by Petitioner's filing fee or by his in forma pauperis application, see Docket Entry No. 1, the Court denied Petitioner in forma pauperis status without prejudice and directed administrative termination of this matter. See Docket Entry No. 2.  In response, Petitioner prepaid his $5.00 filing fee.  See Docket Entry dated January 14, 2013.  The Court, therefore, directed the Clerk to restore the instant matter to its active docket and screened the Petition pursuant to 28 U.S.C. § 2254, Habeas Rule 4 (applicable to Section 2241 petitions through Rule 1(b)), according to which "the judge must dismiss the petition" if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  See also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief"); accord Lonchar v. Thomas, 517 U.S. 314, 320(1996).  Upon concluding its sua sponte review, the Court dismissed the Petition for lack of Section 2241 jurisdiction.  However, taking notice of the influx of § 2241 petitions substantively indistinguishable from the one filed by

Petitioner's current custodial sentence ensued from his in drug trafficking activities. Specifically, in November 2004, Petitioner was conducting his drug trafficking operations on a boat situated somewhere between 160 to 173 miles off the coast of Columbia. See Docket Entry No. 1, at 12. That conduct was the basis for his prosecution and conviction in the United States. See id.; see also Docket Entry No, 8, at 8. Petitioner pled guilty and stated on the record that his activities at issue took place while he was on the boat "in international waters [of] the Carribean basin." See id. Petitioner's presentence report expressly stated that he was 173 nautical miles off the coast of Columbia; that statement largely corresponding to the factual position Petitioner asserted in the instant matter. See Docket Entry No. 8-5, at 4; accord Docket Entry No. 1 (reflecting Petitioner's claim that he was 160 nautical miles off the Columbian coast when he conducted his illegal activities). He was sentenced to 135 months of imprisonment.

Petitioner now challenges his conviction alleging that his underlying conduct falls outside the reach of the United States criminal jurisdiction. In support of the same, he relies on

---

Petitioner, the Court found it prudent to develop a more detailed record in this matter and, while reserving its final determination, directed Respondent to answer Petitioner's challenges in light of the Court's prior ruling, as well as the seminal matter then entered in this District. See Docket Entry No. 5. Respondent duly complied, and the answer at bar followed. See Docket Entry No. 8.

United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012), an Eleventh Circuit decision interpreting the Maritime Drug Law Enforcement Act ("MDLEA"), 94 Stat. 1159, 46 U.S.C. App. § 1901 et seq. and holding that the United States penal jurisdiction cannot be based on drug trafficking activities taking place in foreign territorial waters.[2]

As this Court already pointed out in its prior decision, Congress established a procedure whereby a federal prisoner might collaterally attack his sentence in the sentencing court by means of a 28 U.S.C. § 2255 motion.[3] See Davis v. United States, 417 U.S. 333, 343-44 (1974); United States v. Hayman, 342 U.S. 205, 219 (1952). "Motions pursuant to 28 U.S.C. § 2255 are the

---

[2] There appears to be no dispute that, under the 1982 United Nations Convention on the Law, 1833 U.N.T.S. 3, art. 3 (entered into force Nov. 16, 1994) (to which the United States is not a signatory but many provisions of which have obtained the status of international customary law), as well as under Presidential Proclamation No. 5928, 3 C.F.R. 547 (1988 Comp.) (Dec. 27, 1988), the term "territorial waters" means the coastal waters extending seaward for four leagues (twelve nautical miles, i.e., 19.3 kilometers) from the baseline of a nation.

[3] 28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution," Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002), and resort to § 2241 is jurisdictionally barred unless the litigant establishes that § 2255 is a vehicle "inadequate or ineffective" to test the legality of his/her detention.[4] See Cradle v. Miner, 290 F.3d 536 (3d Cir. 2002); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997).

The Court of Appeals in Dorsainvil addressed a scenario where § 2255 was "inadequate or ineffective" and, thus, permitted resort to § 2241: there, the Court examined challenged raised by a prisoner whose underlying conduct became no a criminal offense in light of an intervening interpretation of the relevant criminal provision by the United States Supreme Court. See Dorsainvil, 119 F.3d at 251-52. The Dorsainvil exception is, however, narrow construed and, paramount here, inapplicable to

---

[4] A § 2255 motion is inadequate or ineffective, authorizing resort to § 2241, "only where the petitioner demonstrates that some limitation of scope or procedure would prevent a § 2255 proceeding from affording him a full hearing and adjudication of his wrongful detention claim." Cradle, 290 F.3d at 538. Since "[i]t is the inefficacy of the remedy, not the personal inability to use it, that is determinative," id., "Section 2255 is not [deemed] 'inadequate or ineffective' merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. The provision exists to ensure that petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural requirements." Id. at 539.

4

the case at bar because the Eleventh Circuit's ruling in Bellaizac-Hurtado did not transform Petitioner's conduct *on high seas* into a non-criminal activity. Indeed, by now, there is an abundance of case law so holding. See Santos v. Hollingsworth, 2013 U.S. Dist. LEXIS 74917 (May 29, 2013 (D.N.J. May 29, 2013); Landaverde v. Hollingsworth, 2013 U.S. Dist. LEXIS 72214 (D.N.J. May 21, 2013); Sanders v. Hollingsworth, 2013 U.S. Dist. LEXIS 52843 (D.N.J. Apr. 12, 2013); Guerrero v. Hollingsworth, 2013 U.S. Dist. LEXIS 52170 (D.N.J. Apr. 11, 2013); Pandales v. Hollingsworth, 2013 U.S. Dist. LEXIS 22011 (D.N.J. Feb. 15, 2013); Paredes v. Hollingsworth, 2013 U.S. Dist. LEXIS 14563 (D.N.J. Jan. 30, 2013); Ortiz-Dominguez v. Hollingsworth, 2013 U.S. Dist. LEXIS 5605 (D.N.J. Jan. 11, 2013).

Since Petitioner's challenges could have been raised by a timely Section 2255 motion, § 2255 is not an "inadequate or ineffective" vehicle to attack his conviction. Hence, the Court will dismiss the Petition for lack of § 2241 jurisdiction , noting that Bellaizac-Hurtado is inapposite to the case at bar.[5]

Two additional observations appear warranted.

---

[5] Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. Here, the Court finds it not in the interests of justice to direct transfer of this matter to Petitioner's sentencing court. However, no statement made in this Opinion or the Order filed herewith bars Petitioner from seeking leave to file an out-of-time Section 2255 application.

5

First, the Court notes that a judicial decision (finding that the underlying conduct is not a criminal offense) supplies this Court with § 2241 jurisdiction if that decision is rendered by the United States Supreme Court or, perhaps, the Court of Appeals for the Third Circuit.  Cf. 28 U.S.C. § 2255(f) (re-triggering the limitations period for the purposes of collateral review when the "right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"); see also In re Davenport, 147 F.3d 605, 611-12 (7th Cir. 1998) ("We add [some] qualifications, the first [of which is] obvious and the [other] less so.  The first is that the change of law has to have been made retroactive *by the Supreme Court*, as the [Supreme} Court . . . .  [The less obvious point is that a true] 'change in law' is not to be equated to a difference between *the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated*") (emphasis supplied); accord Ortiz-Dominguez v. Hollingsworth, 2013 U.S. Dist. LEXIS 5605, at *15, n. 7 ("[A]bsent Supreme Court finding of non-criminality of a particular conduct (or, at the very least, absent a binding Third Circuit precedent), a determination rendered by any other court (or a determination not applicable on collateral review) would render this Court's resort to the Dorsainvil exception a violation of both the spirit and letter of § 2255 gatekeeping

6

requirement: the jurisdictional determination of Section 2241 would be 'up for grabs,' being dependent on the latest decision rendered by one of inferior federal courts").

Second, this Court notes the unlikelihood of the Third Circuit's adoption of the holding of <u>Bellaizac-Hurtado</u>.

> In <u>Bellaizac-Hurtado</u>, the U.S. Coast Guard, conducting a routine locally-authorized patrol of Panamanian waters and observing a vessel operating without lights or flag, informed the local authorities of that vessel. The local navy pursued the vessel until its occupants abandoned it and fled into a jungle; they were caught by the local law enforcement. The local navy searched the vessel and discovered approximately 760 kilograms of cocaine. Panama consented to extradition to and prosecution of the detained suspects in the United States. A federal grand jury indicted them, prompting them to assert lack of the prosecuting court's jurisdiction and unconstitutionality of the MDLEA, as applied. Having their motion to that effect denied, they conditionally pled guilty, while simultaneously raising their aforesaid jurisdictional argument on appeal. The government responded by arguing that drug trafficking was an offence against the Law of Nations, but the Eleventh Circuit, after examining that argument under international customary law, disagreed.

<u>Ortiz-Dominguez</u>, 2013 U.S. Dist. LEXIS 5605, at *3-4, n.1.

The validity of the Eleventh Circuit position is uncertain. In <u>Murray v. The Schooner Charming Betsy</u>, 6. U.S. 64 (1804), Chief Justice John Marshall cautioned that "an act of Congress ought never be construed to violate the law of nations, if any other possible construction remains." <u>Id.</u> at 118; <u>see</u> <u>also</u> <u>The Paquete Habana</u>, 175 U.S. 677, 700 (1900). Almost a century later, the Court of Appeals for the First Circuit examined the MDLEA under that very principle. <u>See</u> <u>United States v. Cardales</u>,

7

168 F.3d 548, 553 (1999). There, the First Circuit considered a scenario where the defendants were prosecuted for violations of the MDLEA after their Venezuelan-flagged vessel was searched by the United States Coast Guard officers who, upon obtaining consent from the Venezuela government, found evidence of illegal drug trafficking. See id. The First Circuit noted that Venezuela expressly authorized the defendants' arrest and application of the United States penal law. See id. at 552. Affirming the reach of the MDLEA to the defendants, the First Circuit stressed that "due process [did] not require the government to prove a nexus between a defendant's criminal conduct and the United States under the MDLEA when the flag nation has consented to the application of United States law to the defendants"; rather, all what was needed "to satisfy due process, [was to ensure that] the MDLEA [would] not be [applied] arbitrary or [in a fashion which is] fundamentally unfair." Id. at 553 (pointing out that the territorial sovereignty of a foreign nation cannot possibly be violated by the actions of the United States where that nation expressly agreed to allow application of the United States law, and this umbrella principle had no exception in cases based on illegal drug trafficking); accord United States v. Nueci-Peña, 711 F.3d 191, 197 (1st Cir. 2013) (reciting that the MDLEA did not require a nexus between a

defendant's conduct and the United States).[6]

While the circumstances addressed by the Third Circuit in Martinez-Hidalgo and by the First Circuit in Nueci-Peña and Cardales involved drug trafficking on high seas, it appears that the MDLEA construction utilized in those matters is likely to be applied by these circuit courts in a matter presenting a scenario examined in Bellaizac-Hurtado (where the in-territorial-waters search of the vessel and the defendant's arrest were performed by the local authorities who extradited the defendant for the very purpose of United States criminal prosecution) or where the

---

[6] The Court of Appeals for the Third Circuit, in its decision preceding Nueci-Peña and Cardales, adopted an analogous approach. See United States v. Martinez-Hidalgo, 993 F.2d 1052 (1993). In Martinez-Hidalgo, the Court of Appeals examined a scenario where a Columbian national was arrested in international waters after the United States Coast Guard encountered a flagless vessel (the crew of which asserted Columbian nationality) and, upon obtaining permission of the Columbian government, searched the vessel and found large amounts of cocaine. See id. at 1054. Addressing the crew's challenges to the convicting for possession of cocaine on the high seas in violation of the MDLEA, the Court of Appeals pointed out that no nexus to the United States was needed to exercise United States penal jurisdiction and, critically here, eliminated the concern of fundamental unfairness in the matters where the crime at issue is universally condemned, like drug trafficking.

> [W]e acknowledge that there might be a due process problem if Congress provided for the extraterritorial application of United States law to conduct on the high seas without regard for domestic nexus if that conduct were generally lawful throughout the world. But that is not the situation here.

Id. at 1056.

search and seizure, as well as the defendant's physical delivery upon the United States soil was performed with express consent of the nation that had sovereignty over the territorial waters and fostered criminal prosecution of the defendant in the United States.  Accord Ortiz-Dominquez, 2013 U.S. Dist. LEXIS 5605, at *16, n.8 ("UNCLOS authorize states, including United States, Panama, Guatemala, etc., to arrest persons in their territorial seas if it is necessary to suppress narcotics trafficking") (original quotation marks removed); see also Convention Against the Illicit Traffic in Narcotic Drugs ("Convention Against Traffic in Narcotics"), 28 I.L.M. 493.[7]

Correspondingly, without an express Third Circuit precedent reaching a holding substantively identical to that rendered in Bellaizac-Hurtado, the Court would not be in a position to grant

---

[7] The Convention Against Traffic in Narcotics took effect on November 1, 1990, and has been signed by 188 countries; it imposes binding obligations on its signatories to take various cooperative measures regarding extradition, confiscation of narcotics and the proceeds derived therefrom, mutual legal assistance, and cooperation between law enforcement agencies. The Convention also promotes international cooperation through its drug trafficking prosecutorial framework.  See, e.g., art. 6, ¶¶ 6 and 7 ("In considering requests received pursuant to this article, the requested State may refuse to comply with such requests where there are substantial grounds leading its judicial or other competent authorities to believe that compliance would facilitate the prosecution or punishment of any person on account of his race, religion, nationality or political opinions, or would cause prejudice for any of those reasons to any person affected by the request.  The [signatory] Parties shall endeavour to expedite extradition procedures and to simplify evidentiary requirements relating thereto in respect of any offence to which this article applies").

Petitioner relief even if the jurisdictional bar had been absent, and Petitioner had been prosecuted for an offense committed within foreign territorial waters.

In light of the foregoing, the Petition will be dismissed, and the Court will conclusively withdraw its jurisdiction over this matter.[8]

An appropriate Order follows.

s/Renée Marie Bumb<br>
**Renée Marie Bumb**<br>
**United States District Judge**

Dated: May 31, 2013

---

[8] The Court takes this opportunity to note the commendable thoroughness of Respondent's answer and accompanying record.